## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID SHADLE, | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Civil Action No. 12-81 |
| | ) Chief Magistrate Judge Maureen P. Kelly |
| MIKE WENEROWICZ, S.C.I. Graterford | ) |
| Superintendent; THE ATTORNEY | ) |
| GENERAL OF PENNSYLVANIA; JON | ) |
| PECK, District Attorney of Westmoreland | ) |
| County, | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

David Shadle ("Petitioner") is a state prisoner who has initiated this habeas corpus

proceeding pursuant to 28 U.S.C. § 2254, challenging his state court conviction for first degree

murder in the killing of his girlfriend. This case has been stayed pending the exhaustion of

Petitioner's state court remedies. ECF No. 12. Petitioner has exhausted his state court remedies

and the case is ripe for disposition.

Petitioner raises two Grounds for Relief in the instant Petition, with sub-claims in Ground

Two:

> **GROUND ONE:** Newly-Discovered Evidence/Legally Innocence of First
> Degree Murder[.] ....
>
> The Commonwealth's Key witness, Dr. Cyril Wecht used his own
> invented physics formula to disprove defense case theory that murder was caused
> by accident. This information was discovered through jailhouse para-legal and
> through DOC Math Teacher.
>
> Legally innocence of first degree murder because murder happened as an accident
> rather than through purpose and intent.

ECF No. 29 at 5.

**GROUND TWO:** Layered Claim of Ineffective Assistance of Counsel (Trial & PCRA) pursuant to Martinez v. Ryan, (2012)....

Attorneys failed to: (1) Raise and/or refused to provide Petitioner with copies of his trial transcripts, which would have afforded him an opportunity to timely raise his newly-discovered evidence claim relating to the false testimony of Dr. Cyril Wecht, (2) Counsel was Ineffective for failing to communicate with Petitioner during trial and failed to establish evidence of provocation; (3) Counsel was ineffective for failing to properly prepare character witnesses for testimony; (4) Counsel was ineffective for failing to provide expert testimony, (5) Counsel was ineffective for failing to raise the issue of time credit.

Id. at 7.

For the reasons that follow, we find that Petitioner's Grounds for Relief were

procedurally defaulted and/or meritless. Accordingly, because none of the Grounds merit the

grant of federal habeas relief, the Petition will be denied. Because jurists of reason would not

find denial of the Petition debatable, a Certificate of Appealability will also be denied.

## II. FACTUAL BACKGROUND

The Post Conviction Relief Act ("PCRA") trial court in the second PCRA proceedings

described the factual background in its May 6, 2011 Opinion and Order.

The facts presented at trial established the following:

Shadle was involved in a romantic relationship with Jessica Aaron, a 19 year-old sophomore at Indiana University of Pennsylvania from approximately September 2005 through January 2006. The initially loving relationship eventually deteriorated into what was described by Jessica's roommate, Nicole Hofrichter, as "more fighting, more intensity in fighting, a lot of yelling, screaming." (TT 80-81).[6] Hofrichter testified that Jessica had left their dorm room on the morning of January 24, 2006 to pick up Shadle. When Jessica returned at approximately 5:30 p.m., she was hysterical, and took Hofrichter to see her car windshield, which had been smashed. (TT 83-84). Hofrichter never saw Shadle with Jessica again. (TT 85).

---

[6] Numerals in parenthesis preceded by the letters "TT" refer to specific pages of the trial transcript of the trial in this matter, held before Judge Richard E. McCormick, Jr., and made a part of the record herein.

2

Trooper Douglas Snyder testified that he was dispatched to the Advance Auto Supply in Indiana, Pa., for a report of a boyfriend/girlfriend dispute and a broken windshield. (TT 287-288) He testified that he observed Shadle in Jessica's car, spoke with him, and that he admitted to breaking the windshield. (TT 289-291). He transported Shadle to the State Police Barracks in Indiana and issued Shadle a non-traffic citation for the damage to the windshield. Shadle pled guilty to that citation and paid a fine on February 7, 2006. (TT 291-297).

Nicole Hofrichter testified that she knew that Shadle called Jessica repeatedly on her cell phone after the January 24, 2006 incident. She testified that at times, Jessica would sometimes pick up the phone, sometimes she would hang up, and eventually, she ignored Shadle's calls. (TT 85-88). Hofrichter indicated that the last time she saw Jessica Aaron was about 6:30 p.m. on February 27, 2006. (TT 89).

Shadle resided at the time with his uncle, George Cline, in Slickville, Westmoreland County, Pennsylvania. (TT 98-99). Cline testified that he was familiar with Jessica Aaron, knew what type of car she drove, and knew that she was Shadle's girlfriend. (TT 102-103). Cline stated that Shadle and Jessica came into his Slickville house around 6:00 p.m., spent some time there, and then left for dinner. (TT I04-105). He testified that he was watching television when they returned around 10:30 p.m. and went straight to Shadle's room. Cline heard the two arguing in Shadle's room, so he turned up the volume on the television and eventually fell asleep. (TT 108-109).

Cline saw Shadle emerge from his room at about 1:00 p.m. Shadle told Cline that he would return in an hour, and then drove Jessica's car away. He never again returned to the residence. (TT 115-116).[7] Cline testified that as he sat down to eat dinner, he recalled that Jessica had not left with Shadle, so he thought to wake her up and see if she wanted something to eat. When Jessica did not answer his knocks on the door, Cline unlocked the door and discovered Jessica's body lying on the floor of Shadle's bedroom. (TT 117-119). He recalled that she had a sleeping bag over her body, and that her head was covered with a plastic grocery bag. He and his girlfriend immediately called 9-1-1. He believed that it was approximately 4:30 when he discovered Jessica's body. (TT 119-121).

---

[7] There was additional evidence that established that the defendant had used Jessica's S&T bank card in Delmont, Westmoreland County on February 28, 2006 at approximately 7:55 p.m. as captured through ATM camera surveillance. He withdrew $300.00 in cash from Jessica's account. (TT 478-486).

Members of the Pennsylvania State Police arrived at the Cline residence in response to the 9-1-1 call. Trooper Stepinski testified that he processed and photographed the scene on February 28, 2006. He testified that his examination of

Jessica's body showed that the bag which covered her head was actually tied tightly, "pulled tight and tied to a knot on the left cheek... it was tight around her neck." (TT 191). The bag was filled with blood, and Jessica's face and head showed signs of trauma, including lacerations and bruising. (TT 192-193). An autopsy was performed by Dr. Cyril Wecht, who opined that although Jessica had sustained injuries to her head which resulted in a fracture of her skull and swelling in her brain, the cause of her death was asphyxiation due to manual strangulation and smothering. (TT 399-400, 404).

Shadle was arrested by Pennsylvania State Police officers on March 1, 2006. Following his arrest, Shadle made numerous verbal and written statements regarding the death of Jessica Aaron. All of Shadle's statements consistently related that he and Jessica had had an argument on the evening of February 27th. He stated that Jessica became enraged at him and came after him and started to claw and scratch him. He stated that Jessica jumped at him, but that he moved out of the way and Jessica hit her head on a piece of furniture.[8] She started to bleed and was unresponsive. Shadle then reported that he shook her to wake her up, but she was not breathing. He stated that he placed the plastic bag under her head to catch the blood, and, eventually, he left the residence. (TT129-130, 307-309, 334-335, 346-348, 351-353). Joseph Lee Cline, Jr., Shadle's cousin, testified that Shadle had called him on February 28th and told him that he was going to stop at his house at about 1:30 p.m. Indeed, Shadle arrived as he said he would, driving Jessica's car. The two watched television and played video games until they went out to get beer and cigarettes. Joseph Lee Cline Jr., testified that Shadle told him that Jessica had jumped off the bed at him and hit her head, and she went limp. He told him that Jessica was hurt. When he was told to call the police for help, he stated that he was scared and, eventually, asked for Cline Jr.'s help to "get rid of" Jessica's car and her body. (TT 161-175).

_____
[8] To Tpr. Danny Moy, he stated that Jessica hit her head on an end table. (TT 309). To Cpl. Kenny Karas, he stated that it was the dresser. (TT 334). In a letter written to his uncle George Cline, it was the TV stand. (TT 129).

PCRA Trial Court slip op., ECF No. 38-2 at 40-42. Upon appeal to the Pennsylvania Superior Court, the Superior Court adopted the PCRA trial court's opinion as its own in affirming the denial of PCRA relief. ECF No. 38-3 at 7 ("Accordingly, we adopt the trial court's opinion dated May 6, 2011, as our own and affirm the court's disposition on the basis of that opinion.").

4

### III. PROCEDURAL HISTORY

#### A. State Court History

Petitioner was charged by criminal information with Murder of the First Degree (18 Pa. C.S. §2502 (a)), Criminal Homicide (18 Pa. C.S. §2501(a)), Theft by Unlawful Taking (18 Pa. C.S. §3921(a)), Receiving Stolen Property (18 Pa. C.S. §3925(a)) and Access Fraud Device (18 Pa. C.S. §4106(a)(1)(ii).

Petitioner proceeded to trial by jury before the Honorable Richard E. McCormick Jr. in the Court of Common Pleas of Westmoreland County. Trial commenced March 12, 2007 and concluded on March 16, 2007. Petitioner took the stand in his own defense, asserting that the death of the victim was accidental and/or provoked. At trial Petitioner was represented by Attorneys Chris Haidze and Gregory Cecchetti. The jury apparently discredited Petitioner's version and credited the prosecution's version as the jury convicted Petitioner of first degree murder as well as all of the remaining counts. Petitioner was sentenced to life in prison for the first degree murder conviction.

Following sentencing, the court appointed new counsel, Attorney Jeffrey Monzo, since Shadle wanted to raise claims of ineffective assistance of his trial counsel, Haidze and Cecchetti. Attorney Monzo filed a post sentence motion claiming that the verdict was against the weight of the evidence, that Attorneys Haidze and Cecchetti were ineffective for failing to call a forensic psychiatrist to support Petitioner's claim of intoxication/diminished capacity defense and for failing to develop a defense of heat of passion to the first degree murder charge. ECF No. 38-2 at 3. Following a hearing, at which Attorneys Haidze and Cecchetti testified, id., Shadle's motion for a new trial was denied by the Court.

Shadle, through Attorney Monzo, filed a notice of appeal to Superior Court. Attorney Monzo raised only one issue on the appeal, namely, that Attorneys Haidze and Cecchetti were ineffective for failing to call a forensic psychiatrist. ECF No. 38-1 at 10. The Superior Court affirmed the judgment of sentence on October 27, 2008. Commonwealth v. Shadle, 964 A.2d 445 (Pa. Super. 2008) (unpublished memorandum). Id. at 10 – 12. No petition for allowance of appeal was filed in the Pennsylvania Supreme Court.

Shadle then filed a petition under the PCRA claiming ineffective assistance of counsel on October 7, 2009.[1]

New counsel, Attorney Jeffrey Miller, was appointed for Shadle who filed an amended petition and Brief in Support of PCRA Petition.[2] Following a hearing, the PCRA trial court

---

[1] Shadle claimed ineffective assistance of Attorneys Haidze and Cecchetti based on the following:

- failed to put a professional witness on the stand
- didn't have murder trial experience
- failed to bring phone records in
- didn't bring out info. on cross examining on commonweath's [sic] witnesses
- miss guided [sic] me not to take the stand
- failed to prepair [sic] character witnesses
- failed to sue the defense I told them to use.

ECF No. 38-1 at 19. Petitioner alleged ineffectiveness on the part of Attorney Monzo as follows:

- failed to file direct appeals
- only used one issue in my P.C.R.A. to prove ineffectiveness
- failed to communicate with me during my appeal (P.C.R.A.)
- failed to appeal my PCRA to Supreme Court
- failed to give me copies of transcripts
- failed to show provocation in appeals

Id.

[2] In the Brief in Support of the PCRA Petition, Attorney Miller only raised two issues: "(1) That trial counsel failed to request a limiting instruction regarding certain evidence that the Defendant

6

denied Shadle's claims regarding ineffective assistance of trial counsel but reinstated Shadle's right to file a petition for allowance of appeal nunc pro tunc. ECF No. 38-2 at 2 – 17. Petitioner filed an appeal to the Pennsylvania Superior Court, challenging the denial of his ineffectiveness claim, however, the appeal was quashed due to fact that, after Petitioner filed the appeal to the Pennsylvania Superior Court, Petitioner then filed a Petition for Allowance of Appeal nunc pro tunc in the Pennsylvania Supreme Court. Commonwealth v. Shadle, 26 A.3d 1183 (Pa. Super 2011) (unpublished opinion). ECF No. 38-2 at 22 – 25. The Pennsylvania Supreme Court denied the petition for allowance of appeal nunc pro tunc on March 16, 2011. Commonwealth v. Shadle, 610 Pa. 597, 20 A.3d 47 (2011).

Shadle, through Attorney Miller, filed a second PCRA petition on April 25, 2011, ECF No. 38-2 at 38-2 at 30 – 33, raising the same allegations of ineffective assistance of counsel which had previously been raised in the appeal which had been quashed by the Pennsylvania Superior Court, namely that Attorneys Haidze and Cecchetti were ineffective for not requesting a limiting instruction as to Shadle's prior bad act and that Attorney Monzo was ineffective for failing to raise this claim of their ineffectiveness on direct appeal. The PCRA trial court again denied the PCRA petition. ECF No. 38-2 at 36 – 50. The PCRA trial court first found that Petitioner had waived the claim of trial counsels' ineffectiveness for not seeking a limiting instruction because Petitioner failed to raise the claim in the post-sentence motion where, he raised other claims of ineffectiveness. Id. at 45. Alternatively, the PCRA trial court found the

---

had pled guilty to a summary citation for criminal mischief relating to damage to the victim's vehicle, and that counsel on direct appeal was ineffective in failing to raise and preserve the issue, and ; (2) that appellate counsel failed to file a petition for allowance of appeal, or to advise the Defendant of his right to do so." ECF No. 38-1 at 25.

7

issue of trial counsels' ineffectiveness meritless because the PCRA trial court found that the prior bad acts evidence was admissible under Pennsylvania evidentiary law. Id. at 46 - 48.

Still represented by Attorney Miller, Shadle filed an appeal of the denial of his second PCRA petition to the Superior Court. The issue raised in Petitioner's counseled Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A. P. 1925(b) was "that trial counsel failed to request a limiting instruction for evidence introduced against him at trial under Pa. R.E. 494(b) and that appellate counsel failed to raise and preserve this issue on direct appeal." ECF No. 38-2 at 52. On December 30, 2011, the Superior Court affirmed the PCRA trial court's denial of his request for relief. Commonwealth v. Shadle, 40 A.3d 207 (Pa. Super 2012) (unpublished opinion), ECF No. 38-3 at 3 – 7. The Superior Court adopted the opinion of the PCRA trial court as its own. Id. at 7 ("In its opinion and order dated May 6, 2011, we conclude that the Honorable Rita Donovan Hathaway's opinion thoroughly discusses the relevant case law and appropriately addresses and disposes of Appellant's arguments on appeal. Further, our review of the record discloses that Judge Hathaway's findings regarding these issues have ample support in the record. Accordingly, we adopt the trial court's opinion dated May 6, 2011, as our own and affirm the court's disposition of the issues on the basis of that opinion.")(footnote omitted).[3]    A petition for allowance of appeal to the Pennsylvania Supreme Court, filed by Attorney Miller, was denied on July 23, 2012. Commonwealth v. Shadle, 616 Pa. 652, 49 A.3d 443 (2012), ECF No. 38-3 at 9.

---

[3] It was on January 17, 2012, when Petitioner signed an "Application for Abeyance and Stay of Petitioner's Federal Habeas Issues for AEDPA timeliness Purposes," ECF No. 1, which was docketed in this Court on January 24, 2012 and which initiated the instant proceedings in this Court.

8

Shadle filed a pro-se third PCRA petition on September 24, 2012. In the pro se third

PCRA petition, Shadle raised the following Issues:

> 1. Dr. Cyril Wecht's Mathematical Formula Tendered at Trial is In Discord with Newton's Second Law of Motion.

ECF No. 38-3 at 17.

> 2. Defendant's Counsel [i.e., Attorney Monzo] had a significant conflict of interest.

Id. at 31.

Although not stated as a separate issue, Petitioner also raised a claim in the third PCRA

petition that his sentence was illegal because he "received no credit for time served. Although

somewhat insignificant for a life-sentenced prisoner, the issue lends credence to this court[']s

jurisdiction to adjudicate this case, and requires a remedy. 42 Pa. C.S.A. Sec. 9543(a)(2)(vii)."

Id. at 29.

The PCRA trial court appointed counsel, i.e., James Robinson. Attorney Robinson filed a

no merit letter. ECF No. 38-4 at 2 - 22. Shadle submitted a pro-se "Objections to the No-

Merit Letter filed by Attorney Robinson." ECF No. 38-4 at 23 - 26. The PCRA trial court

conducted a hearing on Petitioner's Objections to the No-Merit Letter, and dismissed Shadle's

pro-se PCRA petition on August 15, 2014 by opinion and order following the hearing, finding

that the third PCRA petition was untimely filed and no exception to the PCRA statute of

limitations applied. ECF No. 38-4 at 31 – 45.

Petitioner appealed pro se to the Superior Court and filed a Rule 1925(b) Concise

Statement. ECF No. 38-4 at 46 – 48. The Superior Court affirmed the denial of PCRA relief

again adopting the August 15, 2014 opinion of the PCRA trial court as its own. ECF No. 38-5

at 2 – 7.

## B. Federal Court History

As noted previously, Petitioner initiated these proceedings in this Court with a request to stay and abey these federal habeas proceedings. ECF No. 1. The Court ordered Respondents to file a Response to Petitioner's request, which they did, noting their opposition to granting a stay of this case. ECF No. 8. Nonetheless, the Court granted Petitioner's request for the stay. ECF No. 12. After Petitioner exhausted his state court remedies, the Court lifted the stay and Petitioner returned to this Court. Petitioner's Petition was filed, ECF No. 29, and a Brief in Support was also filed. ECF No. 30. Respondents filed an Answer, denying that Petitioner was entitled to any relief. ECF No. 38. Respondents also caused the original state court record to be lodged with the Clerk's Office. Petitioner thereafter filed a Response or Traverse to the Answer. ECF No. 39. All parties have consented to the Magistrate Judge exercising plenary jurisdiction. ECF Nos. 10, 11.

## IV. APPLICATION OF THE AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

10

## V. DISCUSSION

### A. Ground One – Dr. Cyril Wecht's alleged erroneous statement of Newton's Second Law of Motion.

Petitioner's first claim is that Cyril Wecht, M.D. wrongly testified when he allegedly referred to Sir Isaac Newton's Second Law of Motion.[4] At his trial, Petitioner took the stand to say that the victim's death was more or less an accidental death because she had leapt from the bed at Petitioner, who stepped out of the way and she hit her head on the side of a piece of furniture and was bleeding profusely from the wound and so Petitioner placed a plastic bag over her head and tied it so that the blood would not get on the floor and ruin his uncle's floor. Petitioner did so according to his testimony, only after he had determined (albeit erroneously) that the victim was dead from the head wound, which he contended negated the intent element required for a first degree murder conviction.

### 1. The claim is factually unsupported.

Dr. Wecht took the stand and said that the injury to the victim's head could not have been caused in the manner that Petitioner described because the damage to the victim's head was too massive to have occurred in the manner Petitioner described.[5] Dr. Wecht was asked if the victim "had jumped off the bed as its depicted in that photograph, and lunged the distance, which appears to be approximately four feet, from the bed to the dresser, would she have sustained the

---

[4] Newton's Second Law of Motion was as follows: "Force is equal to the change in momentum (mV) per change in time. For a constant mass, force equals mass times acceleration."

https://www.grc.nasa.gov/www/k-12/airplane/newton.html

(site last visited 9/13/2018).

[5] Dr. Wecht conducted the autopsy on the victim.

11

laceration to her head and the fracture to her skull that you found upon your autopsy?" State

Court Record N.T. at 424 lines 1 - 6. Dr. Wecht answered as follows:

> I do not believe so. I think the distance is too short to have allowed the kind of acceleration or velocity that would be necessary to produce force sufficient to cause the fracture, the laceration and so on. You know, the formula is force equals one-half mass times velocity squared. ... I do not believe that there could be sufficient force generated in such a fall of a couple three feet, such as to produce a fracture of the skull. I do not think so.

Id. lines 7 – 24.

Petitioner takes issue with Dr. Wecht's statement of what Petitioner ascribes as Newton's

Second Law of Motion. ECF No. 38-3 at 18. He claims that his math teacher at his prison told

Petitioner's jail-house lawyer that "Dr. Cyril Wecht's mathematical formula relied upon by the

Commonwealth at trial was, simply wrong." Id. In the Petition, Petitioner raises this claim as

one of "Newly-Discovered evidence/Legally Innocence of First Degree Murder." ECF No. 29 at

5. In his Memorandum in Support of Petition, Petitioner identifies his claim as one falling under

the rubric of Napue.v Illinois, 360 U.S. 264 (1959), asserting that the prosecution somehow

engaged in prosecutorial misconduct by knowingly presenting false information in the form of an

incorrect physics formula. ECF No. 30 at 2.

There are several problems with Petitioner's claim. The first and foremost problem with

Petitioner's contention is that it is he who characterizes Dr. Wecht's testimony as a misstatement

of Newton's Second Law of Motion. However, nowhere does Dr. Wecht purport to be stating

Newton's Second Law of Motion. The Court has carefully reviewed the entire testimony of Dr.

Wecht and nowhere is "Newton's Second Law of Motion" mentioned. The most that Dr. Wecht

states is that "You know, the formula is force equals one-half mass times velocity squared. ..."

Dr. Wecht never says what "the formula" is the formula for. It is only Petitioner's

12

characterization of Dr. Wecht's testimony as a misstatement of Newton's Second Law of Motion that we have in the record before this Court.

The entire factual premise of Petitioner's claim in this regard is simply erroneous. Dr. Wecht was not stating or relying on Newton's Second Law of Motion as such. Indeed, as noted, there does not seem to be a reference to Newton's Second Law of Motion by Dr. Wecht anywhere in his testimony. Rather, it appears that Dr. Wecht was providing a formula that, while possibly bearing some relationship to Newton's Second Law of Motion, was actually the formula for determining kinetic energy. We take judicial notice of the fact that Dr. Wecht correctly stated the formula for kinetic energy: "Kinetic energy is energy possessed by an object in motion. ... Kinetic energy is directly proportional to the mass of the object and to the square of its velocity: K.E. = $1/2$ m $v^2$."[6] The immediately preceding formula is ½ mass times velocity squared, which is the precise formula that Dr. Wecht stated in his testimony. Hence, Dr. Wecht's formula is not an incorrect statement of Newton's Second Law of Motion but is, in fact, a correct statement of the formula for determining kinetic energy. Accordingly, Petitioner's first claim is simply factually unsupported by the record.

---

6

https://www.chem.wisc.edu/deptfiles/genchem/netorial/modules/thermodynamics/energy/energy2.htm

(site last visited 9/13/2018).

See also

https://physics.info/energy-kinetic/

which provides that "Naturally, the kinetic energy of an object at rest should be zero. Thus an object's kinetic energy is defined mathematically by the following equation... $K = \frac{1}{2}mv^2$"

(site last visited 9/13/2018).

Quite aside from the technical statement of the formula for determining kinetic energy,

Dr. Wecht was simply explaining the common sense observation that the victim could not have

gained enough momentum to strike the furniture with such force as to cause the extent of the

injuries to her head given the very short distance between the bed and the furniture. While none

of the people in the Court room may have understood the precise formula for kinetic energy, they

could clearly understand the simple application of the kinetic energy formula to the facts of this

case, namely, that the victim simply could not have gained enough speed or forward momentum

to produce sufficient force to have hurt herself to the extent that she did in the manner Petitioner

described. The jury then apparently made the conclusion that the injury to the victim's head

could not have occurred as Petitioner testified to on the stand. This is unremarkable and

certainly, not a violation of any of Petitioner's federal rights.

## 2. The claim is procedurally defaulted.

Respondents pointed out that Petitioner procedurally defaulted this claim. We agree. We

note that Petitioner raised the claim of Dr. Wecht's alleged misstatement of the formula in his

third PCRA petition. The state PCRA trial court and the Superior Court both found the third

PCRA petition to have been time-barred and relied upon the PCRA statute of limitations to reject

Petitioner's claim regarding Dr. Wecht's testimony. Accordingly, the claim was held to be

procedurally barred under state law and that no exception to the PCRA statute of limitations

applied despite Petitioner's arguments to the contrary.

A federal constitutional claim raised in that PCRA petition which violates the PCRA

statute of limitations is procedurally defaulted for federal habeas purposes. Pettus v. Colons,

CIV.A. 10-951, 2015 WL 1444669, at *10 (W.D. Pa. Mar. 30, 2015) ("because the state courts

relied on an independent and adequate state law procedural rule, i.e., the PCRA statute of

limitations, in refusing to consider Petitioner's claims (enumerated as Grounds Three to Seven in his Amended Habeas Petition) on the merits, Petitioner has procedurally defaulted Grounds Three to Seven for purposes of federal habeas review.").

Petitioner apparently relies on claims that he is actually innocent of the crime of first degree murder and relies upon the "newly discovered evidence of Dr. Wecht's alleged misstatement of the formula" to establish his actual innocence. We take Petitioner to be arguing his actual innocence as an argument invoking the miscarriage of justice exception to the procedural default doctrine. Petitioner also argues ineffective assistance of counsel as cause to excuse his procedural default of this claim.

Given that Petitioner's claim that Dr. Wecht erroneously stated Newton's Second Law of Motion is factually unsupported by the record, Petitioner's claims that his discovery of this new evidence of "mistake" by Dr. Wecht simply cannot form the basis of a claim of new evidence of actual innocence so as to excuse Petitioner's procedural default because there is no mistake and hence, no new evidence. Hence, Petitioner has not carried his burden to show a miscarriage of justice exception to excuse his procedural default.

Nor does Petitioner establish cause to excuse his procedural default of this claim given that counsel cannot be deemed ineffective for failing to raise a meritless claim that Dr. Wecht failed to state a correct formula for Newton's Second Law of Motion when Dr. Wecht did not purport to be stating Newton's Second Law of Motion and when he, in fact, correctly stated the formula for determining kinetic energy.

In light of the foregoing, we find Ground One to be both meritless, and procedurally defaulted. In either event, Ground One does not provide a basis for the grant of federal habeas relief or provide an excuse for the procedural default of any other Grounds for Relief.

## B. Ground Two - Ineffective Assistance of Counsel Claims

In Ground Two, Petitioner raises five separate sub-claims of ineffective assistance of counsel.

### 1. Sub-claims One and Four are meritless.

In Sub-claim No. 1, Petitioner argues that all of his counsel were ineffective for failing to provide Petitioner with "copies of his trial transcripts, which would have afforded him an opportunity to timely raise his newly-discovered evidence claim relating to the false testimony of Dr. Cyril Wecht[.]" ECF No. 29 at 7. As Respondents point out this claim was raised in the third PCRA petition, which the state courts found to be untimely filed. Accordingly, this claim of his counsels' alleged ineffectiveness is procedurally defaulted. Pettus v. Colons, 2015 WL 1444669, at *10.

Alternatively, the claim of ineffectiveness is meritless, in light of the fact that providing Petitioner with his transcripts earlier would not have revealed any mistake by Dr. Wecht as explained above. Hence, Petitioner cannot show any prejudice from the alleged failure of his counsel to provide him his trial transcripts earlier than they did. Strickland v. Washington, 466 U.S. 668 (1984) (to establish ineffective assistance of counsel, a petitioner must establish deficient performance on the part of counsel and prejudice stemming therefrom).

Petitioner also complains that his trial counsel were ineffective for not calling a defense expert to rebut the "incorrect" statement of physics by Dr. Wecht. This is Sub-claim No. 4 of trial counsels' ineffectiveness as enumerated in the Petition. However, the foregoing reasoning with respect to the fact that Dr. Wecht did not misstate the physics formula is applicable also to Petitioner's Sub-claim No. 4 regarding his trial counsels' alleged ineffectiveness for failing to provide a defense expert who would have testified that Dr. Wecht's statement of the formula was

16

incorrect. Sub-claim No. 4 of trial counsels' alleged ineffectiveness is simply meritless as Dr. Wecht did not incorrectly state a physics formula and Petitioner identifies no true expert who would have testified that Dr. Wecht's statement of the formula for determining kinetic energy was incorrect.

### 2. Sub-claims Numbered 2, 3 and 5 were procedurally defaulted.

Respondents point out that Petitioner's claims of ineffectiveness against his trial counsel, enumerated as Sub-claim No. 2 (i.e., not communicating with him and not presenting evidence of provocation by the victim), and as Sub-claim No. 3 (not preparing character witnesses) were procedurally defaulted because they were never presented in any of his appeals to the Pennsylvania Superior Court. ECF No. 38 at 9 – 10.   Petitioner does not contradict the Respondents' assertion that the two claims of trial counsels' ineffectiveness were procedurally defaulted.  Indeed, Petitioner agrees with Respondents that these claims of counsels' alleged ineffectiveness were in fact procedurally defaulted.  ECF No. 30 at 22 -23 ("In the instant habeas action, Petitioner's [sic] raises several claims of ineffective assistance relating to his trial counsel.  However, because these claims have been procedurally defaulted...").

However, Petitioner claims that his procedural default of these claims should be excused because he has cause under Martinez v. Ryan, 566 U.S. 1 (2012) in the form of his PCRA counsel's alleged ineffectiveness for failing to raise these claims of trial counsels' ineffectiveness in state court. ECF No. 30 at 35 (invoking Martinez to excuse the procedural default of Sub-claim No. 2 regarding failure to communicate with Petitioner and failing to establish provocation by the victim); id. at 39 (invoking Martinez to excuse the procedural default of Sub-claim No. 3 regarding character witnesses); id. at 43 (invoking Martinez to excuse procedural default of Sub-

17

claim No. 5 regarding time credit issue). Petitioner fails to carry his burden to show that

Martinez applies herein.

As this Court has previously explained:

> The decision of the United States Supreme Court in Martinez v. Ryan created
> a sea change in the doctrine of procedural default, holding for the first time that a
> claim of ineffective assistance of post-conviction relief counsel could serve as
> cause to excuse the procedural default of a claim of trial counsel's ineffectiveness.
> However, the Supreme Court in Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013)
> explained that Martinez only permits a federal habeas court to find "cause" based
> on post conviction counsel's ineffectiveness and "thereby excus[e] a defendant's
> procedural default, where (1) the claim of 'ineffective assistance of trial counsel'
> was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or
> only 'ineffective' counsel during the state collateral review proceeding; (3) the
> state collateral review proceeding was the 'initial' review proceeding in respect to
> the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that
> an 'ineffective assistance of trial counsel [claim] ... be raised in an initial-review
> collateral proceeding." We find that Petitioner's putative claim of "cause" falters
> on the first prong, i.e., falters on the ground that the claim that trial counsel was
> ineffective for not obtaining the medical evidence was not a substantial claim.

Taylor v. Pennsylvania, CIV. A. 15-1532, 2018 WL 446669, at *9 (W.D. Pa. Jan. 16, 2018).

Petitioner cannot bring himself within the ambit of Martinez for two independent reasons.

As recounted in the procedural history of this case, after his trial, Petitioner was appointed new

counsel, i.e., Attorney Monzo for his post-sentence motions, and Attorney Monzo raised claims

of trial counsels' ineffectiveness but did not include such a claim of trial counsel's

ineffectiveness for Sub-claim No. 2, i.e., failing to communicate with Petitioner and failing to

adduce evidence of provocation, or for Sub-claim No. 3, i.e., failing to prepare and present

character evidence. As such, Petitioner cannot satisfy the third and fourth requirements of

Martinez. As to the third Martinez requirement, the state collateral review proceeding

(irrespective of which of the three PCRA petitions he filed he would characterize under state law

as the "initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"),

was not the initial review proceeding, because the post sentence motion proceeding was the

18

"initial review proceeding" with respect to the potential claim that trial counsel were ineffective for the reasons stated in Sub-Claim Nos. 2 and 3. Nor can Petitioner satisfy the fourth requirement under Martinez given that despite the general rule of Commonwealth v. Grant that claims of ineffective assistance of trial counsel should await the filing of the PCRA petition, there is discretion in the state trial courts of Pennsylvania to permit claims of ineffective assistance of trial counsel to be entertained before the first PCRA petition is filed. In fact, the Superior Court in Petitioner's appeal during his second PCRA Petition noted this very rule of law in the Commonwealth and concluded that this rule was applicable in Petitioner's case. ECF No. 38-3 at 3 – 4 n.1

Hence, Martinez does not provide Petitioner "cause" to excuse his procedural default of Sub-claim Nos. 2 and 3 of trial counsels' alleged ineffectiveness. Nor, as we note above in addressing Ground One, can Petitioner succeed in establishing a miscarriage of justice/actual innocence exception to excuse his procedural default of Sub-claim Nos. 2 and 3.[7]

---

[7] To the extent that Petitioner would claim as cause the ineffective assistance of Attorney Monzo in failing to raise, in post sentence motions, the claim regarding trial counsels' failure to prepare and present character evidence, this particular claim of cause based on Attorney Monzo's failure was itself procedurally defaulted. Although this claim of ineffectiveness of Attorney Monzo was raised in Petitioner's second pro se PCRA petition, the amended second PCRA petition filed by Attorney Miller apparently did not include this claim of Attorney Monzo's alleged ineffectiveness, as the Brief in Support most certainly did not. ECF No. 38-1 at 25. Nor would the ineffectiveness of PCRA Counsel Miller serve as cause to excuse this failure to raise Attorney Monzo's alleged ineffectiveness regarding character witnesses. This is because Petitioner never raised Attorney Miller's alleged ineffectiveness for failing to raise Attorney Monzo's alleged ineffectiveness. We assume without deciding that Martinez might apply to Attorney Miller in the second PCRA petition, which was treated as a first PCRA petition under state law. The second PCRA petition was treated as a first PCRA petition under state law given that Petitioner's direct appeal rights to file a petition for allowance of appeal were reinstated following the first PCRA petition. ECF No. 38-2 at 36 n.1. We further assume without deciding that Attorney Monzo would qualify as "trial counsel" for purposes of Martinez and not as appellate counsel in his capacity of filing a post sentence motion. In any event, assuming Martinez applied to Attorney Miller, any claim of Attorney Miller's alleged ineffectiveness for failing to raise Attorney Monzo's ineffectiveness was waived under state law because Petitioner

19

As for Petitioner's Sub-claim No. 5 of trial counsel's alleged ineffectiveness for failing to raise the issue of the time credit, we note that the foregoing reasoning with respect to Sub-claim Nos 2 and 3 apply with equal force to Sub-claim No. 5. Namely, this claim was never presented in an appeal to the State Courts. Hence, Petitioner's Sub-claim No. 5 of trial counsels' ineffectiveness is procedurally defaulted. Alternatively, this claim was raised in Petitioner's third PCRA petition, which was found to be untimely filed. PCRA Trial Court's Order of Aug. 15, 20914, ECF No. 38-4 at 43 ("Shadle does not set forth any reason why he could not have raised this issue [of the time credit] within one year of the date that the judgment of sentence became final. For this reason, this court has no jurisdiction to entertain the merits of this claim."). Hence, Petitioner's own failure to comply with the PCRA's statute of limitations constitutes an alternative and independent procedural default and he cannot, by definition, have any "cause" to excuse his own procedural default of this claim. Gonzalez v. Superintendent

---

never claimed Attorney Miller's ineffectiveness for failing to raise Attorney Monzo's ineffectiveness until the third PCRA petition, which was time barred. Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that "an ineffective- assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). In fact, the sole claim that attorney Miller raised on appeal to the Superior Court with respect to Attorney Monzo's alleged ineffectiveness was whether Attorney Monzo was ineffective for failing to raise and preserve the issue of trial counsels' failure to request a limiting instruction with respect to Petitioner's prior crime of criminal mischief when he broke the windshield on the victim's car. ECF No. 38-2 at 23. Accordingly, we find any other claim of Attorney Monzo's ineffectiveness to have been itself procedurally defaulted and, therefore, not able to serve as cause. Nor would Martinez serve to excuse this procedural default given that Attorney Miller's alleged ineffectiveness for not raising other claims of Attorney Monzo's ineffectiveness was itself never raised in the state courts by Petitioner. The only claim raised by Petitioner in third PCRA petition was an allegation that Attorney Monzo had a conflict of interest. ECF No. 38-3 at 31. Only in Petitioner's Rule 1925(b) statement did Petitioner assert that "all previous counsel were ineffective ... for procedurally defaulting on defendant's several claims." ECF No. 38-4 at 48. In his brief on appeal, Petitioner made clear that the issue of all prior counsels' alleged ineffectiveness was limited to the following: "All of Defendant's Prior Attorneys were Ineffective for Procedurally Defaulting on this Issue (Incorrect Formula [i.e., Dr. Wecht's formula]) and/or Demonstrated Abandonment." Com. v. Shadle, No. 1543 WDA 2014, 2014 WL 8623481, at 36 (Pa. Super. Dec. 3, 2014), Petitioner's Appellate Brief.

Graterford SCI, 655 F. App'x. 96, 100 (3d Cir. 2016) ("The Supreme Court later clarified in *Coleman v. Thompson* 'that 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him....'"). Nor can Petitioner show any miscarriage of justice to excuse this procedural default.

## VI. CONCLUSION

For the reasons set forth herein, the Petition is dismissed and a Certificate of Appealability is denied as jurists of reason would not find the foregoing debatable.

BY THE COURT:

Date: September 14, 2018

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:    DAVID SHADLE
       HC8564
       SCI Phoenix
       1200 Mokychic Drive
       Collegeville, PA 19426

       All counsel of record via CM-ECF